OPINION
Appellant Joe Evans appeals a judgment of the Stark County Common Pleas Court, Juvenile Division, awarding appellee Stark County Department of Human Services (DHS) permanent custody of his natural daughter, Jo Marie Evans:
 ASSIGNMENTS OF ERROR
ASSIGNMENT OF ERROR NUMBER ONE
 THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED THE STARK COUNTY DEPARTMENT OF HUMAN SERVICE'S MOTION FOR PERMANENT CUSTODY AND TERMINATED THE PARENTAL RIGHTS OF THE APPELLANT BECAUSE THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
ASSIGNMENT OF ERROR NUMBER TWO
 THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES MADE REASONABLE EFFORTS AS REQUIRED BY O.R.C. SECTION 2151.419 TO RETURN THE CHILD TO THE CHILD'S HOME.
ASSIGNMENT OF ERROR NUMBER THREE
 THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THAT JO MARIE EVANS CANNOT AND/OR SHOULD NOT BE PLACED WITH EITHER PARENT AT THIS TIME OR IN THE FORESEEABLE FUTURE.
Jo Marie Evans was born on January 10, 2000. Debra Evans is the natural mother of Jo Marie. Jo Marie was the ninth child born to Debra. Debra had lost custody of her other eight children due to a long history of homelessness. Jo Marie was the fourth child of Debra and appellant. At the time of Jo Marie's birth, the three other children were in the temporary custody of DHS due to homelessness and domestic violence. At the time of Jo Marie's birth, neither parent had complied with the case plan regarding the other three children. Debra admitted to hospital personnel that she had no supplies for the baby, and the hospital indicated to DHS that they did not feel she could care for the infant. Appellee filed a complaint seeking permanent custody of Jo Marie on January 11, 2000, alleging that she was dependent child. An emergency shelter-care hearing was held on January 12. At the hearing, DHS presented evidence that appellant needed to attend Melymbrosia for anger management counseling, and that Debra lacked housing. On February 9, 2000, DHS filed a case plan in the instant case, which mirrored the case plan requirements from the case involving Jo Marie's siblings. The case plan required both parents to maintain clean, adequate housing on an ongoing basis. Appellant was to participate in anger management evaluation and counseling at Melymbrosia or Choices, and participate in a substance abuse evaluation at Quest. At the adjudicatory hearing on April 4, the court found Jo Marie to be a dependant child. The court based this finding on evidence that the child had no support, the parents had questionable housing, and they lacked appropriate child-care items. At the hearing concerning the request for permanent custody, Jeannette Lewis, the family's service worker from DHS, testified that she had worked with the family for a year. Ms. Lewis testified that the case plan required the parents obtain independent adequate housing, and prove this by paying rent and utilities. She testified that appellant had not provided her with a copy of the lease, or proof of payment of rent or utilities on his residence. Appellant testified that he was living with a female friend, and they split the bills and rent. He did not know the landlord's name, and his name was not on the lease. He testified that the home where he was staying was a two bedroom house. He further testified that he and Debra were talking about getting back together. Appellant admitted that he did not complete Melymbrosia due to a lack of funding. He did not attend Choices. He claimed that he went to Longford, but had no proof of attendance. He admitted that he attended Quest on March 17, 2000, and had a total relapse of use of cocaine, alcohol, and marijuana. He testified that he had requested residential treatment for substance abuse, and was referred to the detoxification unit of the Crisis Center. He spent three days in this unit. He testified that after his release, he was to return to the Quest intensive outpatient program, but failed to do so. He admitted that he had been incarcerated during the pendency of the case. After a lunch break in the hearing, appellant, for the first time, produced receipts for bill payments. However, these receipts show that the gas service was in the name of his friend, Wanda Williams, and the electric bill was in the name of Daisy Walter. While appellant testified that he was living with Ms. Williams, he admitted that he did not have a specific rental agreement. Kenneth Swickard, the Stark County Jail coordinator for Quest Recovery Services, stated that he performed an evaluation of appellant while he was at the Stark County Jail in May of 1999. Appellant was diagnosed as being alcohol, cocaine, cannabis, and narcotic opiate dependent, in full remission. However, Mr. Swickard believed that appellant had a high relapse potential. Appellant completed a 16-hour educational program at that time, which would not qualify as a treatment program. Appellant was advised to seek treatment upon his release, and appellant told Mr. Swickard he would be attending AA meetings on his own. The Quest records as of March, 2000, indicated that appellant had relapsed, and was no longer in remission as to alcohol and cocaine dependency. The Quest assessment from March of 2000 reflected that appellant drank four 16 ounce beers per day over a 6 to 7 month period, and used cocaine every other day at a cost of $200 to $300 per day. Saundra Fronimo, a counselor with Melymbrosia, performed an assessment of appellant on August of 1999. She ultimately recommended that appellant attend a treatment program for batterers. Ms. Fronimo testified that appellant had been uncooperative, belligerent, and hostile towards her. In January of 2000, appellant contacted Melymbrosia requesting treatment. He attended one group session, but after he was informed that the department's funding had run out, he did not attend. Appellant had been told that he could make payment arrangements for further counseling, but he did not want to pay anything himself. Based upon this evidence, the court awarded permanent custody of Jo Marie Evans to DHS.
 I
Appellant first argues that the decision is against the manifest weight of the evidence, as he complied with the case plan, had maintained independent stable housing, and sought treatment for chemical dependency. Appellant testified at trial that he was living with a female friend, and they split the bills and rent. He claimed that DHS failed to investigate his housing to determine if it was suitable. However, Jeannette Lewis, the family's case worker, testified that she had not been asked by appellant to view the home. Appellant had not provided her with copies of the lease, or proof of payment of rent or utilities, as required by the case plan. Further, appellant testified that he and Debra were talking about getting back together, and neither appellant nor Debra had independent housing as of the time of trial. Appellant's case plan also required that he seek treatment at Melymbrosia or Choices, for domestic violence issues, and at Quest, for chemical dependency. He admitted that he did not complete Melymbrosia due to lack of funding, as he did not want to pay for treatment out of his own pocket. He admitted that he did not attend Choices. He claimed he went to Longford, but had no proof of attendance. He admitted that he attended Quest on March 17, 2000, and admitted to a total relapse of dependency on cocaine, marijuana, and alcohol. He admitted that after completing in-patient treatment at a detoxification unit for 3 days, he was to return to the Quest Intensive Outpatient program, but had not done so. The judgment is not against the manifest weight of the evidence. The evidence presented by appellee clearly demonstrated that appellant had not complied with the case plan, as he failed to obtain independent housing by paying rent and utilities, had totally relapsed with alcohol and cocaine use, and had failed to seek treatment for problems with domestic violence. The first assignment of error is overruled.
 II
Appellant argues that the court's finding that the department made reasonable efforts in an attempt to reunify him with Jo Marie is against the manifest weight of the evidence. He bases this claim upon the fact that Jeannette Lewis failed to view his house, and to request rent or utility receipts. A good-faith effort to implement a reunification plan means an honest, purposeful effort, free of malice and the design to defraud or seek an unconscionable advantage. In Re: Weaver (1992),79 Ohio App.3d 59, 64. A lack of good-faith effort is defined as importing a dishonest purpose, conscious wrongdoing, or breach of a known duty based on some ulterior motive, or ill will in the nature of fraud. Id. Jeannette Lewis testified that she was unaware that appellant had obtained independent housing, as he had never informed her of this fact. Because of this, she never asked him for receipts for utilities or rent, and did not do a home-study of the place where he was staying. Further, she testified that the case plan requires that he find independent housing, where he had a lease, paid rent, and paid utilities. Further, the evidence reflected that Ms. Lewis provided funding, when it was available, for appellant to attend Melymbrosia and Quest, and facilitated supervised visitation. The court's finding that DHS made reasonable efforts to reunify the family is not against the manifest weight of the evidence. The second assignment of error is overruled.
 III
Appellant argues that the court's finding that Jo Marie cannot be placed with him in the foreseeable future is against the manifest weight of the evidence. As stated earlier, the evidence reflected that appellant was living with a female friend, while discussing reunification with Jo Marie's mother. Appellant did not have independent housing, and Debra Evans did not have independent housing. Further, appellant admitted to a total relapse in drug use during the pendency of the case, admitted that he had not completed counseling for domestic violence problems, and admitted that he had been incarcerated during the pendency of the case. DHS had been involved with the family since 1994, and prior to Jo Marie's birth, a case plan was in effect addressing these issues, concerning appellant's other three children. The evidence clearly demonstrated that appellant made virtually no progress on the case plan. The court's finding that Jo Marie could be placed with him in the foreseeable future is not against the manifest weight of the evidence. The third assignment of error is overruled.
The judgment of the Stark County Common Pleas Court, Juvenile Division, is affirmed.